**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SANDRA MILLER | : |
|     PLAINTIFF, | : |
| | : |
| | : |
|     v. | : Civil Action No.       CV |
| | : |
| THE TRUSTEES OF THE UNIVERSITY | : |
| OF PENNSYLVANIA D/B/A HOSPITAL | : |
| OF THE UNIVERSITY | : |
| OF PENNSYLVANIA, | : |
|     DEFENDANT, | : Jury Trial Demanded |

## CIVIL COMPLAINT

PLAINTIFF, SANDRA MILLER, by and through undersigned counsel, hereby files this Civil Action Complaint against DEFENDANT, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA D/B/A HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA, and avers the following:

## PARTIES

1. PLAINTIFF is Sandra Miller, who is a resident of Leigh County, Pennsylvania at all times relevant to these allegations.

2. DEFENDANT is The Trustees of The University of Pennsylvania, owner and operator of the Hospital of The University of Pennsylvania. DEFENDANT'S Principal Address is 3541 Walnut Street, Philadelphia, Pennsylvania 19104.

3. At all times material hereto, DEFENDANT was the employer of PLAINTIFF.

**NATURE OF THE CASE**

4.  PLAINTIFF brings this action pursuant to the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA"); the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. ("ADEA"); the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA"); and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951 et seq. ("PHRA"), to remedy DEFENDANT'S unlawful employment practices, including disability discrimination, failure to provide a reasonable accommodation, age discrimination, retaliation, and related violations of federal and Pennsylvania law.

5.  PLAINTIFF contends that DEFENDANT discriminated against PLAINTIFF based on her disability and age, failed to provide her with a reasonable accommodation for her disability, retaliated against her for engaging in protected activity, and ultimately terminated her employment because of her protected characteristics and protected conduct.

6.  PLAINTIFF, an individual with a disability and a member of the protected age class, was subjected to disability discrimination, a failure to accommodate, age discrimination, and retaliation throughout her employment with DEFENDANT.

7.  DEFENDANT should not have discriminated against PLAINTIFF based on her disability or age, denied her reasonable accommodations, retaliated against her for requesting accommodations and engaging in protected activity, or terminated her employment in violation of federal and Pennsylvania law.

**JURISDICTION AND VENUE**

8.  This action involves a question of Federal Law under FMLA, the ADEA and Title VII and related Amendments.

9.  Jurisdiction is proper in the Eastern District of Pennsylvania as PLAINTIFF was at all times relevant to these allegations, domiciled in Slatington, Pennsylvania (Leigh County). DEFENDANT regularly and continuously conducts business at all relevant times in Philadelphia, Pennsylvania (Philadelphia County).

10. Venue is proper in the Eastern District of Pennsylvania as PLAINTIFF worked for DEFENDANT at the Cedar Campus, located at 501 S 54th St in West Philadelphia, PA 19143.

11. On or about January 9, 2024, PLAINTIFF duly filed a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC") against DEFENDANT under Charge Numbers; PHRC Case No. 202316143, and EEOC Case No. 17F202460341.

12. On or about July 11, 2024,  PLAINTIFF duly filed a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC") against DEFENDANT under Charge Numbers; PHRC Case No. 202400058 and EEOC Case No. 17F202460850.

13. On or about April 27, 2026 and May 1, 2026, PLAINTIFF received a Notice of Right to Sue letter from the EEOC for both charges.

14. This action is hereby commenced within ninety (90) days of receipt of the Notice of Right to Sue Letter.

15. DEFENDANT'S violations of the FMLA were willful and/or committed with reckless disregard for PLAINTIFF'S rights under the FMLA. Accordingly, PLAINTIFF is entitled to the three-year statute of limitations and all remedies available under 29 U.S.C. § 2617.

**MATERIAL FACTS**

16. PLAINTIFF incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

17. PLAINTIFF was initially employed on August 1, 2011, as a registered nurse by Mercy Hospital before its acquisition by DEFENDANT on or around March 25, 2021.

18. Following DEFENDANT'S acquisition of Mercy Hospital, PLAINTIFF continued employment into substantially the same administrative position she previously held, with only a slight modification to her title, while maintaining the same job duties and working conditions.

19. At all relevant times, PLAINTIFF was employed by DEFENDANT as a Nursing Administrative Coordinator.

20. PLAINTIFF was born on February 26, 1964, at the time of her termination, she was sixty (60) years old.

21. PLAINTIFF has a disability, including anxiety, of which DEFENDANT was aware.

22. For approximately three years prior to the events giving rise to this action, DEFENDANT permitted PLAINTIFF to work a modified schedule as an accommodation for her anxiety.

23. The accommodation allowed PLAINTIFF to successfully perform the essential functions of her position without issue.

24. Beginning in or around February 2023, PLAINTIFF raised concerns regarding DEFENDANT'S handling of patients requiring airborne isolation after DEFENDANT

eliminated and repurposed the final negative pressure inpatient rooms at the campus where PLAINTIFF worked.

25. PLAINTIFF repeatedly expressed concerns regarding patient safety and the potential exposure of patients and staff to tuberculosis.

26. PLAINTIFF raised concerns that employees who interacted with patients undergoing treatment for tuberculosis were not receiving appropriate post-exposure follow-up.

27. Rather than investigate or address PLAINTIFF'S concerns, management instructed PLAINTIFF to "stay out of it."

28. On or about April 2, 2023, DEFENDANT converted PLAINTIFF from an hourly employee to a salaried employee.

29. As a result of this change, PLAINTIFF was no longer compensated for all hours worked.

30. A substantially younger employee, Nichole Willocks, remained an hourly employee who worked in the same position.

31. After learning of the disparity, PLAINTIFF questioned management regarding the differing compensation practices.

32. Following her inquiry, PLAINTIFF received disciplinary action and was warned that she could be terminated if she utilized earned sick leave or continued reporting workplace concerns.

33. On or about May 11, 2023, PLAINTIFF filed a complaint with the Occupational Safety and Health Administration ("OSHA") concerning DEFENDANT'S handling of tuberculosis patients and related patient safety concerns.

34. Shortly thereafter, on or about May 15, 2023, DEFENDANT placed PLAINTIFF on a Performance Improvement Plan.

35. On or about November 9, 2023, PLAINTIFF was informed that her work schedule would change from approximately 10:30 p.m. until 6:30 a.m. to approximately 11:00 p.m. until 7:30 a.m.

36. The schedule change eliminated PLAINTIFF'S longstanding disability accommodation.

37. Due to this her revised schedule substantially increased PLAINTIFF'S anxiety by requiring her to commute during rush-hour traffic, PLAINTIFF requested that DEFENDANT continue her existing accommodation.

38. Alternatively, PLAINTIFF proposed that she conclude her shift at 6:30 a.m. and transfer patient care responsibilities to the Rapid Response Nurse.

39. PLAINTIFF submitted medical documentation supporting her requested accommodation.

40. The revised shift schedule became effective on or about December 17, 2023.

41. On or about December 20, 2023, PLAINTIFF met with Human Resources Representative Michael Lewis regarding her accommodation request.

42. During that meeting, DEFENDANT denied PLAINTIFF'S request to continue ending her shift at 6:30 a.m.

43. DEFENDANT advised PLAINTIFF that all shifts throughout the University of Pennsylvania Health System were required to align.

44. DEFENDANT presented PLAINTIFF with the options of working without the requested accommodation, accepting a demotion, or leaving her employment.

45. On or about December 22, 2023, PLAINTIFF emailed Michael Lewis to inquire whether there was an appeal process concerning the denial of her accommodation request.

46. DEFENDANT did not respond to PLAINTIFF'S inquiry.

47. On or about December 26, 2023, DEFENDANT approved PLAINTIFF'S request for intermittent leave under the Family and Medical Leave Act ("FMLA") for her serious health condition.

48. This approval allowed for up to 8 days per month when her symptoms were flaring.

49. In January 2024, PLAINTIFF filed a Charge of Discrimination with the PHRC and EEOC alleging disability discrimination, failure to accommodate, and retaliation.

50. On or about February 7, 2024, PLAINTIFF reported to Michael Lewis that a coworker was mocking the denial of her accommodation request and interfering with her ability to conduct shift reports by yelling over her.

51. At all relevant times thereafter, PLAINTIFF utilized intermittent FMLA leave as approved by DEFENDANT and complied with DEFENDANT'S procedures for requesting and reporting protected leave.

52. DEFENDANT was aware that PLAINTIFF'S absences were protected under the FMLA and had approved her intermittent leave request.

53. PLAINTIFF continued to report concerns regarding patient safety and regulatory compliance.

54. On or about May 30, 2024, PLAINTIFF submitted a complaint to The Joint Commission regarding concerns involving Medicare and Medicaid Conditions of Participation.

55. On or about June 3, 2024, The Joint Commission conducted an on-site review.

56. Despite its knowledge of PLAINTIFF'S approved FMLA leave, DEFENDANT terminated PLAINTIFF'S employment on or about June 11, 2024.

## COUNT I
## DISCRIMINATION/FAILURE TO ACCOMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT; 42 U.S.C §12203

57. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

58. The Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., prohibits discrimination against qualified individuals with disabilities in employment.

59. The ADA provides that "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

60. To prove disability discrimination, plaintiffs must demonstrate: (i) they have a disability within the meaning of the ADA; (ii) they are otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (iii) they have suffered an otherwise adverse employment decision as a result of discrimination. *Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214 (3d Cir. 2024).

61. The ADA defines "disability" as: A) a physical or mental impairment that substantially limits one or more major life activities of such an individual; B) a record of such impairment; or C) being regarded as having such impairment. 42 U.S.C. § 12102(1).

## COUNT II
## DISCRIMINATION/FAILURE TO ACCOMODATE BASED ON A DISABILITY IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT; 43 P.S § 955(a)

62. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

63. The PHRA prohibits discrimination based on including but not limited to, race, color, handicap, or disability.

64. "Handicap" or "disability" is defined as "physical or mental impairment which substantially limits one of more of such person's major like activities; a record of having such impairment; or being regarded as having such impairment. . ."

65. Once an individual meets this definition of 'handicap' or 'disability,' the PHRA requires the employer to provide a reasonable accommodation that enables the individual to perform the essential functions of the position, unless doing so would impose an undue hardship on the employer.

66. Under the PHRA, a "reasonable accommodation" includes modification of duties, scheduling, amount or nature of training, assistance provided and the like, assuming such modifications do not impose an "undue hardship."

67. "Undue hardship" is defined as an action requiring significant difficulty or expense when considered in light of a number of factors.

68. At all relevant times, PLAINTIFF was an individual with a disability within the meaning of the PHRA.

69. DEFENDANT was aware of PLAINTIFF'S disability and had provided PLAINTIFF with a modified work schedule as a reasonable accommodation for approximately three years.

70. The accommodation enabled PLAINTIFF to successfully perform the essential functions of her position.

71. In or around November 2023, DEFENDANT eliminated PLAINTIFF'S longstanding accommodation by changing her work schedule.

72.   PLAINTIFF promptly requested that DEFENDANT continue her existing accommodation and submitted medical documentation supporting her request.

73.   Alternatively, PLAINTIFF proposed another reasonable accommodation that would have allowed her to perform the essential functions of her position.

74.   DEFENDANT denied PLAINTIFF'S requested accommodations, failed to engage in the interactive process in good faith, and failed to provide a reasonable accommodation despite the absence of an undue hardship.

**COUNT III**
**RETALIATION IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT**

75.   PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

76.   To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) [s]he engaged in a protected activity; (2) an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Johnson v. Sage Dining Servs., Inc.*, No. 23-3929 SWR, 2024 U.S. Dist. LEXIS 201859, at pg. 27 (E.D. Pa. Nov. 6, 2024)

77.   "The right to request an accommodation in good faith is a protected activity under the ADA." *Id.*

78.   DEFENDANT was aware that PLAINTIFF requested reasonable accommodation and submitted medical documentation in support of her request.

79. Following PLAINTIFF'S request for a reasonable accommodation, DEFENDANT denied her request, failed to engage in the interactive process in good faith, subjected PLAINTIFF to increased scrutiny and discipline, and ultimately terminated her employment.

80. There is a causal connection between PLAINTIFF'S request for a reasonable accommodation and DEFENDANT'S adverse employment actions.

81. DEFENDANT retaliated against PLAINTIFF because she exercised her rights under the ADA by requesting a reasonable accommodation for her disability.

**COUNT IV**
**RETALIATION IN VIOLATION OF**
**THE PENNSYLVANIA HUMAN RELATIONS ACT; 43 P.S § 955(a)**

82. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

83. To state a retaliation claim under the Pennsylvania Human Relations Act (PHRA), a plaintiff must adequately plead that: (1) plaintiff engaged in protected activity; (2) a defendant took adverse action against plaintiff either after or contemporaneous with his protected activity; and (3) a causal connection exists between plaintiff's protected activity and that adverse action. *Hitch v. Pittsburgh,* No. 23-2065, 2024 U.S. App. LEXIS 12047, at pg. 1 (3d Cir. May 17, 2024)

84. DEFENDANT was aware of PLAINTIFF'S request for reasonable accommodation and the medical documentation supporting that request.

85. Following PLAINTIFF'S request for a reasonable accommodation, DEFENDANT denied the requested accommodation, failed to engage in the interactive process in good faith, subjected PLAINTIFF to increased scrutiny and discipline, and ultimately terminated her employment.

86. There is a causal connection between PLAINTIFF'S request for a reasonable accommodation and DEFENDANT'S adverse employment actions.

87. DEFENDANT retaliated against PLAINTIFF because she exercised her rights under the PHRA by requesting a reasonable accommodation for her disability.

**COUNT V**
**DISCRIMINATION IN VIOLATION OF**
**THE AGE DISCRIMINATION IN EMPLOYMENT ACT**

88. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

89. The ADEA provides, in relevant part, that "[it] shall be unlawful for an employer. . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, term, conditions, or privileges of employment, because of such individual's age." 29 USC § 623(a)(1).

90. For the purposes of the ADEA and related state and federal statutes, a worker over the age of 40 enjoys protection against discrimination on the basis of age. 29 USC § 623(a)(1).

91. At all relevant times, PLAINTIFF was sixty (60) years old and a member of the class protected by the ADEA.

92. PLAINTIFF was qualified for her position and satisfactorily performed the essential functions of her job.

93. DEFENDANT subjected PLAINTIFF to disparate treatment because of her age, including converting her from an hourly employee to a salaried employee while permitting a substantially younger employee outside the protected class performing the same position to remain an hourly employee.

94. After PLAINTIFF questioned the disparity in compensation practices, DEFENDANT subjected her to disciplinary action and threats of termination.

95. DEFENDANT ultimately terminated PLAINTIFF'S employment.

**COUNT VI**
**DISCRIMINATION BASED ON AGE IN VIOLATION OF**
**THE PENNSYLVANIA HUMAN RELATIONS ACT**

96. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

97. The Pennsylvania Human Relations Act (PHRA) similarly prohibits discrimination by Employers against Employees based on the employee's age. 43 P.S. Sec. 954(h).

98. For the purposes of the PHRA and related state and federal statutes, a worker over the age of 40 enjoys protection against discrimination on the basis of age.

99. For the reasons set forth above, DEFENDANT discriminated against PLAINTIFF because of her age in violation of the PHRA.

**COUNT VII**
**RETALIATION IN VIOLATION OF RIGHTS UNDER THE FMLA**

100. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

101. The FMLA prohibits employers from retaliating against employees for exercising or attempting to exercise their rights under the Act. 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c).

102. At all relevant times, PLAINTIFF was an eligible employee under the FMLA, and DEFENDANT was an employer subject to the requirements of the FMLA.

103. PLAINTIFF exercised rights protected by the FMLA by requesting and utilizing approved intermittent FMLA leave for her serious health condition.

104. DEFENDANT was aware that PLAINTIFF had requested and was utilizing approved FMLA leave.

105. After exercising her rights under the FMLA, PLAINTIFF was subjected to increased scrutiny, disciplinary action, and ultimately termination.

106. On or about June 11, 2024, DEFENDANT terminated PLAINTIFF'S employment.

107. DEFENDANT'S violations of the FMLA were willful and/or committed with reckless disregard for PLAINTIFF'S rights under the FMLA, entitling PLAINTIFF to the three-year statute of limitations and all remedies available under 29 U.S.C. § 255(a).

**JURY DEMAND**

108. PLAINTIFF requests a jury trial on all issues to be tried.

**PRAYER FOR RELIEF**

109. WHEREFORE, PLAINTIFF, Sandra Miller, respectfully request that this Honorable Court enter judgment in her favor and against DEFENDANT The Trustees of The University of Pennsylvania, owner and operator of the Hospital of The University of Pennsylvania, and the Court award PLAINTIFF actual damages for the loss of revenue, including back-pay, differential pay, future earnings and lost benefits with interest; compensatory damages for distress, lost career, embarrassment, and humiliation; punitive damages; costs of this action and reasonable attorney's fees, and all other relief which PLAINTIFF may appear entitled or which the Court deems appropriate and just.

**STARK LAW GROUP, LLC**

By:_____/s/ Eric Stark_____
Eric J. Stark, Esquire
Bar Number: 200677
1370 Harrisburg Pike Lancaster, PA 17601
Phone: 717-844-6350
Email:eric@starklawllc.com

By:_____/s/ Alexis Conrad___
Alexis Conrad
Attorney Bar No: 335686
1370 Harrisburg Pike
Lancaster, PA 17601
Phone: 717-844-6350
Email:alexis@starklawllc.com

DATE:  July 8, 2026